UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jacob Francis,

    Plaintiff,

    v.

City of Athens, *et al.*,

    Defendants.

Case No. 2:19-cv-1554

Judge Michael H. Watson

Magistrate Judge Deavers

## OPINION AND ORDER

Jacob Francis ("Plaintiff") sues the City of Athens, Ohio ("Athens"), and Athens Police Officer Ethan Doerr ("Officer Doerr"), under 42 U.S.C. § 1983 for excessive use of force and under state law for battery. Am. Compl., ECF No. 20. Athens and Doerr move for summary judgment, ECF Nos. 43 & 44. For the following reasons, the Court **GRANTS IN PART** Defendants' motions.

### I.    FACTS

At the time of the events at issue, Plaintiff was a college student attending Ohio University. Plaintiff was drunk on the evening of April 27, 2018, and, at one point, threw a cellular phone into some bushes near the Athens police station. Plaintiff does not remember what happened next, but it is undisputed that Officer Doerr eventually tased Plaintiff and that Plaintiff fell down three stairs, hitting his head on a brick wall. Plaintiff suffered serious injuries from the fall. Plaintiff argues that Officer Doerr's use of the taser amounted to excessive use of force in

violation of the Fourth and Fourteenth Amendments to the United States Constitution and also constituted a battery under Ohio law.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making

credibility determinations or weighing evidence). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### III. ANALYSIS

### A. 42 U.S.C. § 1983 Excessive-Force Claim

Plaintiff and Officer Doerr disagree as to whether Officer Doerr's use of the taser was justified.

However, before turning to the merits of Plaintiff's excessive force and battery claims, the Court must address a threshold issue. It is undisputed that Plaintiff was charged with two criminal offenses—underage consumption and obstructing official business—in connection with the events of April 27, 2018. Meek Aff. ¶¶ 3–4, ECF No. 43-1. Defendants contend Plaintiff released them from any civil liability in connection with the events at issue as part of the plea agreement that resolved those criminal charges. Mot. Summ. J. 2–9, ECF No. 43; Mot. Summ. J. 5, ECF No. 44.

Namely, Defendants argue that Plaintiff's counsel in the criminal proceeding, Susan Gwinn ("Gwinn") approached the Chief City Prosecutor for Athens, Ohio, Tracy Meek ("Meek"), and offered to "sign a release of the City of

Athens and the officer involved in the incident" if Meek "would agree to reduce the charges . . . so that [Plaintiff] would not have to return to Athens" to resolve the criminal case. Meek Aff. ¶¶ 8–9, ECF No. 43-1; *id.* ¶ 8 (explaining that Plaintiff and his family "were interested in resolving the criminal charges in a manner that would not require [Plaintiff] to come back to Athens for disposition of the case").

Defendants provide Meek's affidavit in support of their release defense,[1] *see* Meek Aff., ECF No. 43-1, which more specifically avers the following. Meek discussed with Officer Doerr via email the idea of amending the criminal charges to two counts of disorderly conduct in exchange for a mail-in plea of guilty and a release of liability; Officer Doerr consented to Gwinn's proposal. *Id.* ¶¶ 12–14; July 13, 2018 email from Meek to Doerr, Meek Aff. Ex. 1, ECF No. 43-1 at PAGEID # 597; July 13, 2018 email from Doerr to Meek, Meek Aff. Ex. 2, ECF No. 43-1 at PAGEID # 598.

Meek then relayed her acceptance to Gwinn and told Gwinn that Meek would prepare the release. *Id.* ¶ 14. Meek emailed a release to Gwinn on July 18, 2018. *Id.* ¶ 15; July 18, 2018 email from Meek to Gwinn, Meek Aff. Ex. 3, ECF No. 43-1 at PAGEID ## 599–601. However, although the release contained signature lines for two witnesses and a place for notarization, the release

---

[1] Plaintiff does not object to the admissibility of any portion of Meek's Affidavit or the attachments thereto, so the Court assumes that all of the information contained therein could be presented in an admissible form. *See* Fed. R. Evid. 56(c)(2).

mistakenly failed to include a signature line for Plaintiff himself. Meek Aff. ¶ 16, ECF No. 43-1.

On July 24, Meek received from Gwinn's office a document entitled "Waiver and Payment," which was signed by Plaintiff. *Id.* ¶ 18; Waiver and Pymt., Meek Aff. Ex. 4 ("Meek Ex. 4"), ECF No. 43-1 at PAGEID ## 602–03. The signed "Waiver and Payment" acknowledges Plaintiff's plea of guilty to the two amended charges of disorderly conduct. Meek Aff. ¶ 18, ECF No. 43-1; Meek Ex. 4 at PAGEID ## 602–03.

Meek counter-signed the "Waiver and Payment," which was then filed in the pending Athens County Municipal Court case against Plaintiff. *Id.* ¶¶ 19–20; Meek Ex. 4, at PAGEID # 603. The release that Meek e-mailed to Gwinn was also notarized and filed in that court case. Meek Aff. ¶ 20, ECF No. 43-1; Meek Ex. 4 at PAGEID # 604–05.

Upon the filing of the release in municipal court, Meek realized that Plaintiff had not signed it. Meek Aff. ¶ 21, ECF No. 43-1. Meek asked Gwinn for a signed copy of the release and sent a revised version that included a signature line for Plaintiff. *Id.* ¶¶ 22–24; July 25, 2018 email from Meek to Gwinn, Meek Aff. Exs. 5–6, ECF No. 43-1 at PAGEID ## 607–10. Gwinn acknowledged receipt of the revised release and referred to the omission of a signature as a "mistake." Aug. 1, 2018 email from Gwinn to Meek, Meek Aff. Ex. 7, ECF No. 43-1 at PAGEID # 611. Nonetheless, Meek never received a signed version of the release. Meek Aff. ¶ 26, ECF No. 43-1.

Plaintiff contends that, because he never signed the release, it does not bar his civil claims against Defendants. Resp. 3–7, ECF No. 50.

The Court must therefore determine at the outset whether Plaintiff's § 1983 claims are barred by the release that was filed with the plea agreement in the criminal municipal court case ("Release").

### 1. Release-Dismissal Agreements Generally

The Release at issue in this case is similar to the "release-dismissal agreement" that the Supreme Court considered in *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987) except that the release-dismissal agreement therein involved the complete dismissal of criminal charges in exchange for a release from liability, whereas the Release here was part of a plea agreement that reduced the charges in exchange for both a guilty plea to said reduced charges and a release from liability.

In *Rumery*, the Supreme Court concluded that release-dismissal agreements that release would-be defendants from § 1983 claims[2] do not *per se* violate public policy and must rather be considered on a case-by-case basis. It further concluded that the release-dismissal agreement in that case was enforceable because it was voluntary, there was no evidence of prosecutorial

---

[2] This portion of the Court's analysis pertains only to Plaintiff's § 1983 excessive force claims, which are subject to the *Rumery* standard. *See Staggs v. Ausdenmoore*, 992 F.2d 1217 (6th Cir. 1993) ("Because . . . [the release] purports to waive a right to sue under § 1983—a federal statute—the question of its enforceability is a question of federal law."). The Court addresses Plaintiff's state-law claim below.

misconduct, and enforcement would not adversely affect relevant public interests. *See id.* at 398.

The Sixth Circuit applied *Rumery* to a release contained as part of a plea agreement in *Coughlen v. Coots*, 5 F.3d 970 (6th Cir. 1993), stating that, "under ordinary circumstances it is not improper for prosecutors to obtain releases as part of a plea bargain or dismissal of criminal charges." *Id.* at 974. Therein, the Sixth Circuit set forth the test in this circuit for the enforcement of such releases:

> [T]he *Rumery* opinion instructs us that before a court properly may conclude that a particular release-dismissal agreement is enforceable, it must specifically determine that (1) the agreement was voluntary; (2) there was no evidence of prosecutorial misconduct; and (3) enforcement of the agreement will not adversely affect relevant public interests. The burden of proving each of these points falls upon the party in the § 1983 action who seeks to invoke the agreement as a defense.

*Id.* at 974.

### 2. Plea Agreement and Release in this Case

The Court now considers the above factors as it relates to the Release in this case.

#### a. Voluntariness of the Release[3]

The *Rumery* court considered the following four sub-factors in determining whether the release-dismissal agreement in that case was informed and

---

[3] The voluntariness factor is the only one of the three *Rumery* factors that is even arguably a factual determination suitable for a jury. *See Staggs*, 992 F.2d 1217, 1993 WL 131942, at *3 (6th Cir. Apr. 27, 1993). Accordingly, it is the only factor the Court discusses in terms of whether there is a genuine dispute of material fact. The Court determines the remaining two *Rumery* factors as a matter of law.

voluntary: "(1) the knowledge and experience of the criminal defendant;[4] (2) whether the defendant had an attorney and whether the attorney drafted the agreement; (3) whether the defendant was in jail; and (4) whether the defendant had time to consider the agreement." *Burke v. Johnson*, 167 F.3d 276, 279–80 (6th Cir. 1999). The Sixth Circuit considers the same sub-factors. *E.g., Hill v. City of Cleveland*, 12 F.3d 575, 578 (6th Cir. 1993).

There is no genuine dispute of material fact regarding whether Defendants have proven these sub-factors by a preponderance of the evidence. First, it is undisputed that Plaintiff was academically in his second year of college when he accepted the plea agreement and Release, Francis Dep. 11:11–16, ECF No. 37-1, which is sufficient to establish his knowledge/sophistication. *See Burke*, 167 F.3d at 285 (finding factor satisfied where criminal defendant had an eleventh grade education, could read and write English, and had an extensive criminal history and stating, "courts have found the 'degree of knowledge and sophistication' factor satisfied where the record establishes that the accused had but a 'modest educational background' but was literate" (citations omitted)). Moreover, to the extent the Sixth Circuit analyzes this sub-factor relative to the person's familiarity with the criminal justice system, the Court finds Plaintiff sufficiently sophisticated. *See Patterson v. City of Akron, Ohio*, 619 F. App'x

---

[4] This factor is sometimes phrased as the "sophistication" of the defendant in the criminal case. *See, e.g., Hill v. City of Cleveland*, 12 F.3d 575, 578 (6th Cir. 1993).

462, 471 (6th Cir. 2015) ("Sophistication, in the context of the *Rumery* analysis, speaks to whether the defendant had or should have had sufficient knowledge of or familiarity with the criminal justice system such that we have faith that he knew or should have known what he was bargaining for when he entered a release-dismissal agreement."). Here, Plaintiff testified that he had pleaded guilty to possession of marijuana in a prior case before accepting the plea agreement and Release in this case, Francis Dep. 22:12–20, ECF No. 37-1, showing his familiarity with the criminal justice system and plea bargaining process.

Second, it is undisputed that Plaintiff was represented by criminal defense counsel (Gwinn), and although Meek drafted the actual Release language, it is undisputed that Gwinn first offered to include a release as part of a plea agreement. Meek Aff. ¶¶ 5–6, 8–9, ECF No. 43-1. Thus, Defendants established the second voluntariness factor as well. *Burke*, 167 F.3d at 285 n.3 (6th Cir. 1999) ("Essentially, all that courts require is that the plaintiff be represented and counseled by an attorney." (citations omitted)).

Third, Plaintiff was not in custody when the plea agreement and Release were negotiated or entered on the municipal court docket. Meek Aff. ¶ 10, ECF No. 43-1.

Fourth, Gwinn proposed the plea agreement and Release at some point prior to July 13, 2018, when Meek emailed Officer Doerr for his thoughts on the proposal. At that point, "some 90 days had passed since the [original] misdemeanor charges were filed against" Plaintiff. Meek Aff. ¶¶ 11–12, ECF No.

43-1. Meek emailed the Release to Gwinn on July 18, 2018, and Plaintiff had it notarized on July 22, 2018. Meek Aff. ¶ 15, ECF No. 43-1; *id.* at Ex. 4 at PAGEID # 605. It was entered on the municipal court docket on July 25, 2018. Meek Aff. ¶ 20, ECF No. 43-1. Plaintiff has not pointed to any evidence that Meek or anyone gave him a deadline for accepting the plea agreement and Release, and the Supreme Court has found a period of three days sufficient to satisfy this sub-factor. *Rumery*, 480 U.S. at 394.

Accordingly, all of the *Rumery* subfactors point to a finding of voluntariness.

Despite the above, Plaintiff argues the Release is not binding because he did not sign it. Resp. 3, ECF No. 50. Specifically, Plaintiff argues that his failure to sign the Release means there was no meeting of the minds and that he did not understand the meaning of the Release. *Id.* Plaintiff argues that he had only one conversation about his criminal case with Gwinn, that most of the conversations were between Gwinn and Plaintiff's mother, that Gwinn never discussed a Release with Plaintiff, and that he never agreed to Release Defendants from civil liability. *Id.* In fact, Plaintiff argues that his understanding of the plea agreement was only that his mother would pay some money, and, in exchange, he would not have any criminal charges against him, would not go to jail, and would not have to return to Athens, Ohio, to resolve the criminal case. Resp. 4, ECF No. 50.

Notably, the only evidence Plaintiff cites to support any of the above arguments is a single portion of his deposition wherein he testified that he did not

understand that a release of Athens and Officer Doerr from civil liability constituted part of the plea agreement. Francis Dep. 107:20–08:4, ECF No. 37-1.

But, despite Plaintiff's selective citation to his deposition testimony, on the whole, Plaintiff's testimony does not support the notion that he lacked an understanding of the meaning of the Release or failed to voluntarily accept the same. Immediately after Plaintiff testified that he did not understand that a release of liability was part of the plea agreement, he equivocated and eventually admitted, "yea, I did sign the City from getting sued [sic], but there's no signature on that." See Francis Dep. 108:5–18, ECF No. 37-1. Defense counsel then clarified Plaintiff's knowledge with the following exchange:

> Q: Were you aware that part of the plea agreement in this case was that you were agreeing to not sue the City of Athens or Officer Doerr for anything arising out of the incident that happened that evening?
> A: Yeah, I was aware.

*Id.* at 109:4–9. And again:

> Q: So let me go back to my original question. Was it your understanding that part of this deal was that you were going to agree not to sue the City of Athens or Officer Doerr?
> A: Yeah.

*Id.* at 111:10–15. And again:

> Q: You understood when you went to the bank that day that part of the plea deal that your lawyer had arranged for you was that the City of Athens was going to let you plead guilty to the lesser charges, right?
> A: Yes.
> Q: And as a part of that deal, you had to agree to release the City, the Police Department and Officer Doerr from liability?
> . . .

> A: Yeah.
> Q: I mean, you read the release?
> A: Yeah.
> Q: You understood it, right?
> A: Yeah.

*Id.* 124:16–25:8. Plaintiff repeated the same understanding yet again:

> Q: You knew that a release of the City and the Officer was part of the deal, right?
> A: Yeah.

*Id.* at 126:13–15.

Based on Plaintiff's testimony, no reasonable juror could fail to find that there was a meeting of the minds between Meek and Plaintiff that one of the material terms of the plea agreement required Plaintiff to release Athens and Officer Doerr from civil liability.

Further, no reasonable juror could find that Plaintiff did not accept the plea agreement, including the Release. Plaintiff testified that he received both the Waiver and Payment and Release, read the same, took them to his bank, signed the Waiver and Payment, and had the Release notarized. Francis Dep. 111:16–12:11, 114:16–15:12, 126:16–24, ECF No. 37-1. He took that action in order to accept the plea agreement. *Id.* at 128:11–23 (testifying that he "was going to sign them all at the same time to the Judge" in exchange for a reduction in his original charges). When Plaintiff handed the Waiver and Payment and Release to the notary public, she "filled out everything[,]" told him to sign the Waiver and Payment (which he did), and she notarized the Release. *Id.* at 123:10–24; 124:1–13. Plaintiff knew the plea agreement required him to sign the Release

with a notarized signature but saw that there was no signature line to do so. *Id.* at 113:9–14:1; 123:3–6; 128:18–20 ("I went there with the understanding that I needed to have both filled out there."). Yet when he realized there was no actual signature line on the Release he "didn't know it was a big deal." *Id.* at 115:21–23. The Waiver and Payment and Release were both filed on the municipal court docket and approved by the judge in that case. Meek Aff. ¶¶ 20–21, ECF No. 43-1. Plaintiff's actions in taking the documents to the notary and causing them to be filed in the criminal court case manifested his acceptance of all material terms of the plea agreement. *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 6 (2002) ("Part performance under an agreement may remove uncertainty and establish that a contract enforceable as a bargain has been performed.").

Plaintiff's testimony that he might not have signed the Release if it had contained a signature line, Francis Dep. 125:9–126:4, ECF No. 37-1, does not create a genuine issue of material fact as to whether he accepted the Release notwithstanding his failure to sign it. Simply put, what Plaintiff would have done in a hypothetical situation does not change what he did here. It does not change the following facts: Plaintiff admitted multiple times to having understood that the Release was a material term of the plea agreement; Plaintiff signed the plea agreement; Plaintiff took the Release to the bank and had it notarized; and Plaintiff permitted the plea agreement and notarized Release to be filed on the municipal court docket.

For all of these reasons, there is no genuine dispute of material fact as to whether Plaintiff voluntarily accepted the Release.

### b. Prosecutorial Misconduct

The Court notes at the outset that, although Plaintiff has not argued there was prosecutorial misconduct, it is Defendants' burden to prove the Release is enforceable. *See Coughlen*, 5 F.3d at 974. The Court therefore considers whether Defendants have met their burden of showing that the Release was not a product of prosecutorial misconduct.

This factor requires the Court to consider whether there is evidence that, "following their use of excessive force, police officers file[d] unfounded criminal charges as bargaining chips to cover up their own conduct or to induce the victim to give up his cause of action" or the prosecutor filed frivolous charges upon learning of the victim's potentially meritorious civil rights claim. *Id.* Thus, if the Court finds Meek secured the plea agreement and Release "in the face of substantial evidence of police misconduct," the Court could consider that to be evidence of prosecutorial misconduct. *Coughlen*, 5. F.3d at 974 ("[Release-dismissal] agreements should be scrutinized closely in cases where substantial evidence supports an allegation of police misconduct, in view of the potential for abuse of release-dismissal agreements by law enforcement officials." (citing *Rumery*, 480 U.S. at 394–95)).

There is no evidence of prosecutorial misconduct here. First, there is no evidence that Officer Doerr reported unfounded criminal charges as bargaining

chips to cover up his own misconduct. Plaintiff was originally charged with obstructing official business and underage consumption. Meek Aff. ¶ 4, ECF No. 43-1. With respect to the underage consumption charge, the evidence is undisputed that Plaintiff was under the age of 21 on April 27, 2018, and yet had a blood alcohol content of .208. Francis Dep. 62:18–63:9, 131:17–24, ECF No. 37-1. The underage consumption charge, at least, was therefore certainly not unfounded. Nor is there any evidence suggesting Officer Doerr reported the original charges as bargaining chips to obtain a release. He did not even suggest a release—Plaintiff's criminal defense attorney did. Meek Aff. ¶¶ 7, 8–9, ECF No. 43-1. Officer Doerr merely agreed with the suggestion after Meek asked for his thoughts on the proposal. Meek Aff. ¶¶ 12–14, ECF No. 43-1; *id.* at Exs. 1 & 2.

Second, the same evidence shows that Meek did not file frivolous charges upon learning of Plaintiff's potential civil rights claim. Rather, the charges were filed *before* Meek became aware of the fact that Plaintiff had been tased and injured, and she became aware of those allegations in the course of Plaintiff's criminal defense attorney offering to resolve the charges via a plea and release. Meek Aff. ¶¶ 6, 8, 9, ECF No. 43-1.

Third, the plea agreement and Release were executed under judicial supervision as they were entered as part of the criminal case and were approved by the municipal court judge presiding over that case. Meek Aff. ¶¶ 20–21, ECF

No. 43-1; *Rumery*, 480 U.S. at 402 (O'Connor, J., concurring in part) (stating this fact "clearly mitigate[s]" against the possibility of abuse).

There is no evidence here of prosecutorial misconduct.

### c. Relevant Public Interests

"The majority justices in *Rumery* suggested that this standard can be satisfied if the prosecutor demonstrates that obtaining the release was motivated by an independent, legitimate criminal justice objective." *Coughlen*, 5 F.3d at 395 (citing *Rumery*, 480 U.S. at 398, 401–02). "This does not appear to create a particularly difficult hurdle for the prosecutor to clear." *Id.* Again, however, the Court places the burden on Defendants notwithstanding Plaintiff's failure to argue that the plea agreement and Release adversely affect any public interest.

The Sixth Circuit has held that the exact justification offered here—to "assist[] in the disposition of a criminal case in an office and in a court with a heavy caseload," Meek Aff. ¶ 28, ECF No. 43-1,—"would probably suffice under ordinary circumstances." *Coughlen*, 5 F.3d at 395 (citing *Rumery*, 480 U.S. at 401).

Also pertinent here is the Sixth Circuit's further statement that "[r]elease-dismissal agreements . . . can be legitimate criminal justice tools in situations where police misconduct is alleged, but the prosecutor is genuinely unable to ascertain the truth surrounding the allegation." *Coughlen*, 5 F.3d at 395. Meek averred that "[g]iven the use of a Taser and the serious injuries Mr. Francis had sustained, [she] believed it was possible that he might allege police misconduct."

Meek Aff. ¶ 28, ECF No. 43-1. But "[u]nder the circumstances (i.e. the incident happened at night in a dark area and with no known non-police witnesses), [she] thought it might be difficult to ascertain the truth surrounding any allegations of police misconduct." *Id.* This supports enforceability. *Burke*, 167 F.3d at 282 ("[W]here the parties present evidence advancing conflicting versions of the facts giving rise to a Section 1983 litigant's alleged injuries, enforcement is appropriate.").

Finally, another legitimate criminal justice objective is to achieve a settlement "where criminal charges are not the product of prosecutorial misconduct and both sides benefit substantially from a balanced settlement in the sense that both avoid exposure to potential liabilities and expenses." *Coughlen*, 5 F.3d at 395. The Court already concluded above that there was no prosecutorial misconduct, and the Court also concludes that both Plaintiff and Defendants substantially benefitted from the plea agreement and Release. Meek averred that Plaintiff's criminal defense attorney relayed Plaintiff's and his family's desire to resolve the criminal case without having to return to Athens, Ohio. Meek Aff. ¶ 8, ECF No. 43-1. Additionally, the plea agreement involved sealing Plaintiff's record, Meek Aff. Ex. 4, ECF No. 43-1 at PAGEID # 603, and Plaintiff testified that he wanted to become a firefighter and therefore had an interest in not having the criminal charges appear on his record. Francis Dep. 110:10–111:9, ECF No. 37-1. Thus, Plaintiff received a substantial benefit from the plea agreement.

For all of these reasons, the Court finds there are legitimate criminal justice objectives for the plea agreement and Release. The Court further finds that because Plaintiff pleaded guilty to reduced charges, the public's interest in securing justice for criminal actions was still satisfied but was done so in an efficient manner that conserved public resources. Defendants have therefore shown that the plea agreement and Release do not adversely affect any relevant public interest.

### d. Conclusion as to § 1983 claims

Because there was no prosecutorial misconduct, enforcement of the Release would not be adverse to any public interest, and no reasonable juror could find that Plaintiff did not knowingly and voluntarily accept the Release, the Release is enforceable and bars Plaintiff's § 1983 claims against Defendants. Defendants are **GRANTED** summary judgment on those § 1983 claims.

### B. State-Law Battery Claims

The parties have not briefed whether the *Rumery* standard or another standard applies to the enforceability of the Release as it relates to Plaintiff's state-law battery claims. Rather than order additional briefing on this issue, and because the Court has disposed of all of the claims over which it had original jurisdiction, the Court declines to exercise supplemental jurisdiction over those claims. The Court therefore **DISMISSES WITHOUT PREJUDICE** Plaintiff's state-law battery claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants summary judgment on Plaintiff's § 1983 claims. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's state-law battery claims. The Clerk shall enter judgment for Defendants on the § 1983 claims and close this case.

**IT IS SO ORDERED.**

Nov. 30, 2020

/s/ Michael H. Watson
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**